UNITED STATES
COURT OF FEDERAL CLAIMS

---

```
SIERRA NEVADA CORPORATION,     )
                               )
              Plaintiff,       )
                               )
v.                             )   Docket No.:  12-375C
                               )
UNITED STATES,                 )
                               )
              Defendant.       )
```

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 18, 2012.)

Pages:   1 through 39

Place:   Washington, D.C.

Date:    June 14, 2012

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

1

IN  THE  UNITED  STATES  COURT  OF  FEDERAL  CLAIMS

SIERRA NEVADA CORPORATION,    )
                              )
            Plaintiff,        )
                              )
v.                            )   Docket No.:  12-375C
                              )
UNITED STATES,                )
                              )
            Defendant.        )

                        Thursday,
                        June 14, 2012

                    <u>Live Tape</u>

        (The following transcript was transcribed from a

digital recording provided by the United States Court of

Federal Claims to Heritage Reporting Corporation on

June 18, 2012.)

            BEFORE:  HONORABLE CHRISTINE O.C. MILLER
                     Judge

            APPEARANCES:  (Via Telephone)

            <u>For the Plaintiff</u>:

            TODD WITHAM MILLER, Esquire
            Holland & Hart, LLP
            90 South Cascade Avenue, Suite 1000
            Colorado Springs, CO 80903
            (719) 475-7730

2

APPEARANCES:   (Cont'd)

        For the Intervenor Defendant,
        <u>Hawker Beechcraft Defense Company, LLC</u>:

        JAMES J. McCULLOUGH, Esquire
        MICHAEL ANSTETT, Esquire
        Fried, Frank, Harris, Shriver & Jacobson LLP
        801 17th Street, N.W.
        Washington, D.C.  20006
        (202) 639-7000

        <u>For the Defendant</u>:

        JOHN HUNTER BENNETT, Esquire
        U.S. Department of Justice
        Civil Division
        P.O. Box 480, Ben Franklin Station
        Washington, D.C.  20044
        (202) 616-2279

3

1              P R O C E E D I N G S

2                                      (1:06 p.m.)

3              THE CLERK:  The United States Court of

4    Federal Claims is now in session, the Honorable

5    Christine Odell Cook Miller presiding.  God bless this

6    Honorable Court.

7              Calling the case of Sierra Nevada

8    Corporation v. United States, Case No. 12-375, for a

9    joint status conference.

10             THE COURT:  Good afternoon, everybody.

11             MALE VOICE:  Good afternoon, Your Honor.

12             MALE VOICE:  Good afternoon, Judge.

13             THE COURT:  Mr. McCullough, which of your of

14   counsel did you say was with you today?

15             MR. MCCULLOUGH:  Michael Anstett, Your

16   Honor.

17             THE COURT:  Thank you.  And Ms. Pullin

18   spells her name P-U-L-L-I-N?

19             MALE VOICE:  Yes.

20             THE COURT:  Okay.  The purpose of getting

21   together today is to determine how we're going to

22   approach this matter.  I know that first we've learned

23   that the contract will not be awarded until January

24   2013 according to the complaint.  I don't know whether

25   under Amendment 10 what the closing date for proposals

1    is, but, you know, we do have a range of time.  On the

2    other hand, since this is essentially a preproposal

3    matter, I want to handle it as fast as you want me to

4    handle it, but I have several observations.

5            The first is that Mr. McCullough's motion to

6    intervene took the position that Plaintiff should have

7    filed a notice of a directly related case, but

8    technically that's really not required since judgment

9    entered in No. 11-897C on May 11.

10           Technically, the notice of directly related

11   case is couched in the present tense, and that case no

12   longer exists.  However, I am aware of the docket

13   sheet.  Everything is under seal and except insofar as

14   in Mr. McCullough's motion and Plaintiff's complaint,

15   the references to those proceedings, I've not been

16   able to review them.

17           But certainly, if the parties had a strong

18   preference, since counsel are the same throughout

19   except Mr. Molar from the same law firm for Mr.

20   Maywart, if the parties had a strong preference, I

21   certainly wouldn't be offended to ask George Miller if

22   he wants this case or would take this case.

23           But, you know, unless there's a consensus,

24   I'm going to proceed.  There's nothing wrong with

25   filing a new complaint, not filing a notice of

5

1    directly related case and getting a new judge.  The

2    clerk's office informs us when there have been prior

3    proceedings, and as I said, other than a docket sheet,

4    I have no further intelligence about it.

5           So, to get to our agenda, we have

6    Plaintiff's motion for a protective order and a motion

7    for leave to file under seal, and the motion, the

8    clerk's office grants those motions as to the

9    complaint.  The protective order Mr. Robinson, my law

10   clerk, just requested because it was not submitted on

11   ECF and I was wondering if Mr. Bennett had an

12   opportunity to review that proposed protective order,

13   which apparently included modifications to the

14   standard order.

15          MR. BENNETT:  I have looked at it very

16   briefly, Your Honor.  I received it a few minutes

17   before this status conference started, but given my

18   preliminary review, it looks very similar if not

19   identical to the protective order that was in place

20   during the prior protest in front of Judge George

21   Miller.

22          THE COURT:  And that was an order that Mr.

23   McCullough agreed to?

24          MR. BENNETT:  It was, Your Honor.

25          THE COURT:  Okay.  Then we'll go to the next

1    agenda item, which is Hawker's motion to intervene as

2    a matter of right, and I know that Hawker intervened

3    as a matter of right in the prior case.  I know that

4    it's been represented that Defendant has no objection.

5            Mr. Miller, does Plaintiff have any

6    objection?

7            MR. MILLER:  At this point, Your Honor,

8    we're not sure.  We just received the motion this

9    morning.  Frankly, we're not sure that given Hawker's

10   position in this case it actually has a sufficient

11   economic interest to allow for intervention either as

12   a matter of right or permissibly.

13           The caselaw that was cited in the motion

14   we're looking at right now but appears to be

15   distinguishable.  So for the moment, Your Honor, we

16   don't agree to the motion.  We will commit to respond

17   to it quickly so it can be resolved quickly.

18           THE COURT:  Preliminarily, I'm of a view

19   that Hawker would have standing from the point of view

20   that we know there are only two offerors and we know

21   that it would be expected to be a proposer.  And in

22   the past, that's been regarded as sufficient standing.

23           Vis-à-vis its standing relative to the prior

24   protest, I agree.  It has no vested interest with

25   respect to the prior protest and the award at this

1    point.  However, with respect to Amendment 10 to the

2    solicitation, it is going to be an offeror and we know

3    that, if nothing else, from its pleadings.

4          MR. MILLER:  Your Honor, this is Mr. Miller

5    again.  With those thoughts, which are very helpful,

6    in mind, I will confer with my client, but I suspect

7    we will be conceding the motion.

8          THE COURT:  Right.  And I will allow you to

9    proceed on that basis.  Now, for purposes of

10   scheduling though, I will allow Mr. McCullough to

11   participate.  I'm not going to enter the protective

12   order with respect to anybody else other than existing

13   parties.  But when I enter the ruling, I will enter an

14   order for expedited briefing on the motion to

15   intervene at the conclusion of today's conference.

16         Okay.  Now this is a billion dollar

17   contract, so I was rather surprised to see Plaintiff

18   invoking the Equal Access to Justice Act.  I was just

19   curious whether Plaintiff is eligible.

20         MR. MILLER:  Your Honor, that was a part of

21   the complaint that someone else worked on.  Let me

22   revisit that.  I'm not prepared to respond to that,

23   but I will look at that promptly today as well.

24         THE COURT:  The reason that's important, my

25   reaction would be, no, you aren't, but, you know,

1    assuming you were, I always want to give the

2    government an indication as we proceed what the

3    Court's thinking is about the merits of the complaint,

4    and I'm not going to speak ex cathedra if in fact that

5    was an inappropriate allegation.

6              MR. MILLER:  We will look at that this

7    morning, Your Honor, and correct that if we need to.

8              THE COURT:  Okay.  The motion for protective

9    order I'm going to grant as to the two parties.

10    They're now in there.  Okay.

11              What is the proposal submission date under

12    this last amendment, which I gather is Amendment 10?

13              MR. BENNETT:  I believe it's at some point

14    next week, Your Honor, but I'm not entirely positive.

15              MR. MILLER:  It is, Your Honor.  It's

16    Monday, June 18.  Part of the submissions have been

17    made.  The past performance components I believe were

18    due on the 4th, but the final part of the proposals

19    are due on Monday, the 18th.

20              THE COURT:  And you haven't asked for any

21    injunctive relief, so we're just going to schedule

22    this how we schedule it.

23              MR. MILLER:  That's correct, Your Honor.

24              THE COURT:  Okay.  Well, they certainly

25    asked for proposals in time to do some testing if

1    testing there may be.  I mean, there's a substantial

2    hiatus between January 2013 and June 18, but be that

3    as it may, let me tell you what I think we're dealing

4    with here and what we're not dealing with here.

5         The Air Force has the ability to issue a

6    corrective order of its own, as a product of its own

7    best judgment, and it has a lot of discretion in doing

8    so.  It is not required to reinstate Plaintiff's award

9    if the corrective order is improvidently sought out.

10   I mean, that's just not the basis of a challenge.

11        If there isn't a facial basis to the action

12   taken under the corrective order that can be alleged

13   to be arbitrary or capricious, it may proceed.  And so

14   Plaintiff has no vested interest in its award against

15   which the corrective order operates.

16        The corrective order, however, cannot be

17   pretextual.  It cannot be designed in the form of a

18   resolicitation that works around any of the

19   deficiencies that previously rendered Hawker

20   noncompetitive.  And I'm assuming there was no prior

21   discussion with respect to the financing issue.  None

22   has been mentioned, but the prohibition on the

23   financing has been eliminated.  And with respect to

24   the testing, I infer from the complaint and the

25   attachments that unquestionably the Air Force found

1    Hawker to be deficient in the testing and eliminated

2    the entire requirement, Part L.

3            But by virtue of Hawker's protest -- I

4    haven't read it, but I have read Hawker's allegations

5    about it in its memo of P&A in support of its motion

6    to intervene.  I gather that Hawker is saying either

7    that the testing was done deficiently and that

8    actually it should have passed and/or that Plaintiff

9    had performance deficiencies that should have been

10   revealed in the testing and it didn't qualify.

11           Now this becomes important because what

12   we're dealing with here is an action that challenges

13   the corrective action.  If the action challenges the

14   corrective action, the reasons why the corrective

15   actions were taken and all of the documentation

16   relating thereto become if you will the decisional

17   documents that we're going to be looking at.

18           And those decisional documents, if in fact

19   they led to whatever the current iteration of the

20   solicitation is in 10 -- I haven't read it, it wasn't

21   submitted -- if they discussed the elimination of the

22   testing requirement, that's obviously very pertinent.

23           For example, let's say the scenario went as

24   follows.  We -- I'm hypothesizing the Air Force -- we,

25   the Air Force, reviewed all the testing and we found

1    that it actually was carried out defectively and

2    Plaintiff was deficient and maybe Hawker was or

3    wasn't, but it was so defective that we just want to

4    be done with it.  We don't need this requirement and

5    the reason we don't need it is as follows, and then

6    there's a reason.  There would seem to have to be a

7    reason if Plaintiff is correct, as alleged, that the

8    operational requirements are the same.

9         If in fact the record does not support that

10   kind of approach, it would appear that the

11   solicitation was designed around perceived

12   deficiencies in Hawker's proposal.  That's the worst-

13   case scenario from Hawker's point of view.  And the

14   antidote to that or the retort to that is the record

15   or analysis that supports the corrective action,

16   whatever that is.

17        Again, I emphasize two things:  one, that

18   the reason for the corrective action eliminating that

19   requirement can't be pretextual.  It can't be designed

20   around a way to eliminate a problem that Hawker faced

21   and Plaintiff didn't face, and that would apply of

22   course to the financing requirement.

23        And the reasons for the changes in the

24   solicitation as part of the corrective action would be

25   expected to be found in the administrative record,

1    which doesn't consist of the earlier procurement.  It

2    consists of all of the documentation surrounding the

3    resolicitation.  I mean the decision to go ahead, a

4    corrective action by the resolicitation.

5           Plaintiff might argue that the actual

6    testing results earlier are material because the

7    analysis of them would be contradictory to or not

8    illuminated by the administrative record that reveals

9    what was done around the corrective action, in which

10   case that part of the earlier record would be

11   transported into this record.  And I assume there

12   would be a motion in that regard if after Plaintiff

13   examines it the file is incomplete regarding the

14   corrective action or not self-explanatory, not fully

15   explanatory or otherwise raises questions.

16          But right now the way this procurement is

17   postured, Plaintiff's strong argument is not the

18   argument that a corrective action must be fashioned

19   that gives Plaintiff the fullest opportunity to

20   compete in its area of strength, which apparently are

21   these demonstration test results.  You know, you can

22   argue it.  You can try to brief it.  Good luck.  I

23   don't think there's anything out there that will

24   support it.

25          Plaintiff has a very strong argument that to

13

1     the extent that the resolicitation is designed around

2     previously identified deficiencies, whether recognized

3     or not, and the were not includes the financial one

4     that would have rendered Hawker noncompetitive, it

5     would be declared arbitrary and capricious under the

6     <u>Blue & Gold</u> standard.  That's a very strong argument.

7          In that regard, Exhibit A is going to be in

8     the administrative record, the CDI report.  Why?  We

9     don't need a motion for it.  It's going to be in

10    there, and, Defendant, when it files the

11    administrative record, make sure that it's in there.

12    And that is because it preceded the draft Amendment

13    No. 0008.  It was apparently finalized on April 13,

14    and the first draft amendment was April 17, and the

15    final version, which we have as Plaintiff's Exhibit E,

16    was May 4.  Then there are two other amendments that

17    were alluded to.  I don't have those.

18         MR. BENNETT:  Your Honor, if I could

19    interject for a moment.  It's Hunter Bennett for the

20    Department of Justice.

21         My understanding from talking to the agency

22    is that the people that drafted the amendment to the

23    RFP weren't shown the CDI.  They were purposely kept

24    apart from that so that they wouldn't be influenced by

25    the various problems that had come before.

14

1          THE COURT:  That's all well and good, but

2     it's also self-serving.  You'll need affidavits or

3     declarations.  I want that report in.

4          MR. BENNETT:  Okay.  Well, we'd be happy to

5     provide the affidavits and the declaration.  We would

6     appreciate the opportunity to brief the issue before

7     the CDI is ruled to be a necessary part of the

8     administrative record.

9          THE COURT:  This matter was made public to

10    -- and by public, I mean published.  It was published

11    to a House committee on the 13th, delivered to

12    individuals in the Congress.  Whether or not your

13    individuals were kept pure from knowledge of that,

14    that knowledge was in the possession of members of

15    Congress and their associates and assistants and those

16    people who deal with concerned constituents such as

17    corporations.  And if anybody had access to that

18    information, I want to see it.

19         MR. BENNETT:  Well, Your Honor, I know for

20    sure that Congress was given a debriefing, and I think

21    that some, if not all, of that debriefing was made

22    available to the public.  I'm not entirely sure that

23    Congress was actually given a copy of the CDI report.

24         THE COURT:  Right.  Well, then you're going

25    to be informing me of that.  I mean, you know, I don't

1    know either, but I do know the timing, and if Congress
2    was given a debriefing, you are going to inform me
3    what Air Force officials, if any, were privy to this.
4              MR. BENNETT:  Okay.
5              THE COURT:  I want to know.  Whether or not
6    there were efforts to keep the individuals who were
7    drafting a resolicitation away from that particular
8    document is not as material as who did know about it.
9    This is an operative document.  It's called
10   institutional knowledge, and it's attributable, giving
11   due regard to efforts to erect Chinese walls.
12             MR. BENNETT:  Okay.  Again, Your Honor,
13   these are all good questions.  I will find out the
14   answers to them, and as soon as I have them, we will
15   give Your Honor a filing that answers these questions.
16             THE COURT:  Your filing will be in support
17   of your position that this should be excluded from the
18   administrative record or excluded from the record of
19   the Court proceeding.
20             Remember, there are two levels of relevance
21   here.  One is documents that were in existence and
22   relied on by the decisionmakers, which includes the
23   entire Department of Air Force, and two is whether the
24   existence of the document and its having been
25   published, and by that, I mean uttered aloud,

1    reported, disclosed to others who have access to

2    outside sources, is relevant to Plaintiff's bid

3    protest.  So the fact that it might not be submitted

4    as part of the administrative record does not mean

5    that it doesn't have to be turned over.  So try to

6    deal with it on both grounds so we can move the matter

7    forward as to that.

8         If Plaintiff would rather take the laboring

9    oar as you did in front of Judge Miller and move for

10   its disclosure, that's fine with me.  I mean, it's

11   Plaintiff's choice, not Defendant's here.  So, if

12   Plaintiff wants Defendant to take the laboring oar and

13   respond, that's one thing.  Or if Plaintiff wants to

14   go ahead on its own, that's up to Plaintiff.

15        Mr. Miller?

16        MR. MILLER:  Your Honor, we will be happy to

17   file an affirmative motion.  We agree with the Court

18   that we think it is a part of the administrative

19   record, but even if not, we believe it is relevant.

20   But we'll be happy to file something that outlines our

21   views on those questions.

22        THE COURT:  Okay.  Now that brings up matter

23   two, and again, this doesn't involve Mr. McCullough

24   until or unless, you know, Hawker becomes a party,

25   which I think it will, and that is it's up to the

1    parties to what extent they want me to look at any or

2    all of the matters in the previous sealed procurement.

3    It's absolutely up to you.

4           If, for example, Mr. McCullough files a

5    brief that shows that the earlier protest raised

6    testing deficiencies of a certain nature that infected

7    the entire testing process and thereby should have

8    been reflected in Plaintiff's results as well as

9    Hawker's, that's the kind of thing that that's a

10   perfectly appropriate appendix, but, you know, it's

11   under seal, so, you know, you do what you have to do.

12   But whether and to what extent you want to rely on

13   those documents is at the discretion of the parties.

14   I'm not taking the position that I have to see them or

15   don't.  It's totally up to you.  This is your case,

16   not mine.  I mean, it's mine to decide but not mine to

17   craft.

18          I think then that we would be proceeding in

19   the normal course with the filing of the

20   administrative record, and we'll have our briefing on

21   the CDI results.  We're going to previously have

22   expedited briefing on the motion to intervene.  The

23   protective order will be entered as to two of the

24   parties.  If the motion to intervene is granted, I

25   will extend the protective order to Hawker.  So are

1    the parties in a position where they would like to

2    propose a briefing schedule, understanding that any

3    dates operative for Defendant would also be operative

4    for the putative Intervenor?  Do you want to do that

5    now?

6            MR. BENNETT:  Your Honor, we would prefer

7    not to set a briefing schedule now, particularly in

8    light of the fact that we're going to be having

9    motions for actions concerning the CDI issue.  I think

10   once that's resolved, at that point, we would be ready

11   to set a briefing schedule.

12           THE COURT:  Mr. Miller, what are your views?

13           MR. MILLER:  Well, first of all, Your Honor,

14   I believe it would be helpful and I will commit to do

15   this to confer with both Mr. Bennett and Hawker's

16   counsel about the scope of the administrative record.

17           I did speak with Mr. Bennett tentatively

18   yesterday, and at least tentatively, we seem to both

19   agree that the entire previous record should just be

20   included with this so that we don't get into questions

21   about violating the protective order in that case.

22           If that's still the case, that seems like it

23   will speed things up and we will have the

24   administrative record sooner than later.  And if so, I

25   guess I would like to have a briefing schedule set.

1    Maybe we can't do it today, but I guess I wouldn't

2    want to have to wait until the full CDI issue is fully

3    resolved to have a schedule in place.

4             THE COURT:  I agree.  What I will do is the

5    administrative record may be augmented by the CDI

6    report or the CDI report may be used by anybody in

7    litigation, which is a different issue because

8    Defendant takes the position this was not part of the

9    administrative record and it was not relied on in the

10   decisionmaking process that led to the original

11   proposed amendment and any of its subsequent versions,

12   but that doesn't mean that it isn't relevant to the

13   action.  You know, we could do an awful lot if you

14   wanted to by having in-camera inspection, but I'll be

15   very happy to address this in any matter that all

16   counsel agree.

17             I do think we should have a date for filing

18   the administrative record.  So I'm going to be giving

19   you today an expedited briefing schedule for

20   Plaintiff's motion to supplement the record -- or

21   motion to include -- it's not supplementing the

22   record.  It's a motion to designate the report as part

23   of the administrative record.  And we'll have

24   expedited briefing on that.  We'll have expedited

25   briefing on the motion to intervene.

1          I'm not going to stay awake at night about

2     the EAJA issue.  That is again something that it

3     doesn't render the pleading defective.  It would just

4     be irrelevant.  You either qualify or you don't

5     qualify, but that's a dialogue I like to keep going if

6     it is in play because it's very important for the

7     government to understand at every given point where

8     Plaintiff's case has to be litigated and where it

9     doesn't.

10         Right now, when could you file the

11    administrative record?  And I gather counsel of the

12    available parties agree that it should include the

13    prior filings in No. 11-897C.  When do you want to

14    file that?

15         MR. BENNETT:  Well, there are a couple

16    things that are worth noting, Your Honor.  The first

17    is that the administrative record in the prior protest

18    was 120,000 pages long.

19         That being said, one of the reasons, and

20    this will sort of be fleshed out more as we go

21    forward, one of the primary reasons behind the Air

22    Force's decision to take corrective action was that we

23    discovered on the day that Hawker filed its MJAR in

24    that case that the administrative record was

25    substantially incomplete.  And then in the process of

1    the agency gathering or attempting to gather up the

2    documents to make the record complete, they discovered

3    that it was even more incomplete than they actually

4    had initially thought, and most troublingly, they were

5    unable to ascertain a date by which they would be able

6    to make the administrative record.

7         THE COURT:  So it was not filed?

8         MR. BENNETT:  The short answer, Your Honor,

9    is that even though they had filed 120,000 pages of

10   documents, they discovered that there were a lot more

11   documents out there that they did not have a handle

12   on.

13        THE COURT:  Okay, I'm sorry.  I thought you

14   were talking about making available to me the record

15   in the prior proceeding.

16        MR. BENNETT:  Yes.  We were going to make --

17        THE COURT:  The litigation record is what I

18   was talking about.

19        MR. BENNETT:  Oh, the litigation record as

20   opposed to the administrative record?

21        THE COURT:  Well, yes.  I thought that's

22   what you were talking about.  That's what was under

23   seal.

24        MR. BENNETT:  Yes.  We would --

25        THE COURT:  I mean, do you both agree that

1    that would be helpful?

2            MR. BENNETT:  Yes.  It would be helpful for

3    Your Honor to have at your disposal.

4            THE COURT:  That's what I referred to it as

5    the record in the prior case.

6            MR. BENNETT:  Yes, but as I just

7    mentioned --

8            THE COURT:  Now had you filed a

9    substantially incomplete administrative record of

10   120,000 pages?

11           MR. BENNETT:  Yes, that's correct, Your

12   Honor.

13           THE COURT:  You had?  You had or had not?

14           MR. BENNETT:  We had.

15           THE COURT:  Okay.  Now this is important.

16   I'm not going to allow to be filed in this case a

17   120,000-page record.  The action in the prior case and

18   the corrective action taken thereon was on the basis

19   of the record as it then existed, and the record as it

20   then existed was 120 pages long, plus the recognition

21   that it was substantially incomplete.

22           We read administrative records.  The only

23   relevance of this pagination is -- and all parties

24   have access to it, and Mr. McCullough will be able to

25   state his preference if and when he's admitted.  But

1    as far as I'm concerned, what you're going to file is

2    going to represent a consensus between you and Mr.

3    Miller as to which of those pages pertain to testing

4    and finance.

5              MR. BENNETT:  Okay.

6              THE COURT:  And I don't want to see the rest

7    of it.  It's not relevant to anything in this case

8    unless Mr. Miller can tell me why it is.

9              MR. MILLER:  Okay, Your Honor.  Thank you.

10             MR. BENNETT:  With respect to the --

11             THE COURT:  It's your responsibility as

12    counsel to purge this down to those issues.

13             MR. BENNETT:  Okay, Your Honor.  And in

14    light of what Your Honor said about what you

15    envisioned the administrative record should be going

16    forward, we believe that the agency would be able to

17    get those documents gathered up and have them ready.

18             You know, last time I think part of the

19    problem, we may have erred on setting an overly

20    ambitious time to get the record in.  I think this

21    time, if we had three weeks, that would be ideal, and

22    we would do our best to get the administrative record

23    filed in less time than that.

24             THE COURT:  Well, I can't imagine in a case

25    like this where all you have is documentation that led

1    to the draft amendment and the cancellation in a

2    month's period, you know, roughly from April 17 to May

3    and any period before that when you're dealing with --

4    anything dealing with cancellation, that, you know,

5    we're certainly not approaching a significant record.

6    I mean, this has nothing to do with submissions by the

7    parties.

8              What I'm suggesting is this.  I've never

9    waited three weeks for an administrative record.  I

10   mean, a bid protest to me is a bid protest.  It's a

11   matter that deserves expeditious treatment.  We try to

12   interfere at the very least with the procurement

13   process and the time period is relevant to that goal.

14             I have no problem with your submitting this

15   incrementally.  As a matter of fact, it would help our

16   review of it.  The administrative record could be

17   viewed as two parts, the administrative record that

18   deals with the Court proceedings in 11-897 -- I'm

19   sorry.  That's a record that you agree I should look

20   at in connection with this proceeding.  I'm not

21   calling it administrative record, but you are going to

22   agree that I'll put in the order that it'll be

23   considered a part of this proceeding, okay?

24             MR. MILLER:  Okay.

25             THE COURT:  A part of this record, okay, so

1    you don't need to file anything.

2           MR. BENNETT:  We just need to designate what

3    portions of it are relevant?

4           MR. MILLER:  And may I ask for some

5    clarification, Your Honor?  With that incorporation of

6    the prior record, does that include the administrative

7    record, meaning that with the new protective order?

8           THE COURT:  No.  No.

9           MR. MILLER:  Okay.  So the question I have

10   is --

11          THE COURT:  Nobody acted on that.  The only

12   thing that ever happened was a brief was filed.  To

13   the extent that there are page references to the

14   administrative record in the one brief that was filed

15   by Hawker, assuming that they weren't replicated in an

16   appendix, they're going to be part of this record,

17   okay.  So no.  It's going to be limited to anything

18   dealing with the testing --

19          MR. MILLER:  That I understand, Your Honor,

20   and we will abide by that.  I'm probably being overly

21   concerned about the technical issue, but because the

22   prior record is subject to a protective order, I just

23   want to be careful that if we use this, that the prior

24   record in terms of winnowing it down, we're not

25   violating that prior protective order.

1           THE COURT:  Well, I mean, Mr. Miller wasn't

2      admitted.  It was the prior counsel, and I don't

3      understand how it would.

4           MR. MILLER:  But I was granted access to the

5      administrative record in that case, Your Honor.  We're

6      just concerned.  We want to be careful about referring

7      back to that administrative record and being in

8      violation of that protective order.

9           I guess given the Court's instruction for us

10     to winnow that administrative record down, I'm

11     understanding that that prior administrative record is

12     subject to the current, the new protective order and

13     what we need to do is thin it out so that this Court

14     doesn't get burdened with 120,000 pages.

15          THE COURT:  Well, that was the hope.

16          MR. MILLER:  And that will be my plan.  I

17     just didn't want to get crosswise with the earlier

18     protective order in having to dig back into that

19     administrative record in the context of this case, but

20     it sounds like we're all clear on that.

21          I guess the other question I have, and maybe

22     this is directed to Mr. Bennett, is what will be the

23     procedure in terms of our ability to participate in

24     winnowing down the previously undisclosed component of

25     the record?  Will we get a chance to see all of that,

27

1    Hunter, and then have a chance to weigh in on how much
2    of that should --
3             THE COURT:  No.  No, no, no.  That case was
4    over.  That case was over with a portion of the record
5    on file.  The portion of the record on file was the
6    portion of the record that -- well, maybe I spoke too
7    soon.  Maybe I misinterpreted Mr. Bennett's remarks.
8    I thought you said that all the documents that were
9    found were found but that there was a recognition that
10   the record was substantially incomplete.  I inferred
11   from that remark that you filed everything that you
12   had, but you knew you need to get more.  If you're
13   saying you filed everything that you had, but you were
14   holding a bunch of more records that you were going to
15   supplement except that you took corrective action and
16   you held them back knowing they too didn't complete
17   the record, that's a different issue.
18            MR. BENNETT:  Well, Your Honor, the way that
19   it worked really was we filed the 120,000 pages that
20   we thought represented the entire administrative
21   record.  We discovered that that was not the case.
22   There are many, many other documents out there that
23   the Air Force has not gathered because the Air Force
24   elected to take corrective action.
25            Our position would be --

1          THE COURT:  Okay.  I mean, that's what I

2     just said.  If you didn't elect to gather them, they

3     don't exist for purposes of this case.

4          MR. BENNETT:  Okay.  I understand.  Your

5     Honor, Mr. Miller does raise an interesting point,

6     though, about this problem with the prior protective

7     order.

8          THE COURT:  Look, you can do what you want

9     with the prior protective order.  I have nothing to do

10    with it.  This is a dead case, and all you need to do

11    is go in and have a joint motion that the seal be

12    lifted to allow you to file the materials under seal

13    in this case and to lift the protective order insofar

14    as any orders emanate in this case.  That's all you

15    have to do.

16         MR. BENNETT:  Okay.

17         THE COURT:  You've covered yourselves

18    legally if you do that.  You know, that's something

19    you do.  It is something you might want to give me a

20    courtesy copy of, but that's between you and Judge

21    Miller and the records people.

22         MR. BENNETT:  Okay.

23         THE COURT:  In other words, you get to read

24    the rules about how you deal with material that is

25    under protective order as well as sealed -- that's

1    being redundant -- the Court record insofar as it's

2    under seal and/or protected, okay?  But I'm going to

3    enter an order that assumes that you're going to take

4    the steps necessary to make these materials available.

5    Right now I couldn't get them if I wanted to.

6           And when I talk about the Court record, as

7    far as I'm concerned, I'm interested in the complaint.

8    I'm interested in the motion to intervene, you know,

9    and I'm interested principally in Hawker's brief and

10   any attachments and anything related to that.  That's

11   it.  That was at the end of that record.  I mean, I'm

12   reading the docket sheet, but there's nothing else

13   substantive.

14          MR. MILLER:  I believe that's correct, Your

15   Honor, because the notice of corrective action was

16   filed before Sierra Nevada had an opportunity to

17   Respondent to Hawker's brief.

18          THE COURT:  That's right.  So what I'm going

19   to do is indicate that I will expect that Plaintiff

20   and Defendant will undertake to lift the seal as to

21   the documents that were part of the earlier Court

22   action and because, you know, just by judicial notice

23   I can refer to them, but just so everybody is

24   operating on the same page, I'm going to have you

25   refile them in this case.  And they're not part of any

1    administrative record.  They're a background document

2    that's relevant to the facts and so that I know I'm

3    looking at the unsealed copy, okay?  And then I'm

4    going to have you file an administrative record that

5    consists of those documents that relate to the issue

6    of testing and financing.  I don't think there's

7    anything else that would be appropriate.

8         Now there is one possibility, and again, I

9    don't know what the allegations of the earlier motion

10   were, but if Mr. McCullough took the position that

11   Plaintiff was deficient in other than essentially the

12   testing, those documents, you know, might make their

13   way into the administrative record in this case.

14        But I gathered that, Mr. McCullough, was the

15   gist of your complaint that there were deficiencies

16   with respect to SNC's testing?

17        MR. MCCULLOUGH:  Your Honor, in the motion

18   for judgment on the administrative record, there are

19   significant issues raised and documented with regard

20   to Sierra Nevada's offering.

21        THE COURT:  Okay.  And when you say raised

22   and documented, were they appendices to your motion?

23        MR. MCCULLOUGH:  No.  We had an electronic

24   record, Your Honor, and I don't recall whether we

25   actually produced paper copies of the referenced

1    documents, but they were all footnoted to the

2    appendices in the administrative record.

3         THE COURT:  Well, I have a standard order

4    that requires a courtesy hard copy of everything, so

5    be aware of that.

6         MR. MCCULLOUGH:  Yes, Your Honor.

7         THE COURT:  Once again I am killing the

8    forest, but you can rest assured we'll read it.  We're

9    not reading 120,000 pages, and Plaintiff didn't

10   cite -- I mean, Plaintiff in that case, Hawker, didn't

11   cite 120,000 pages.  But at any rate, be that as it

12   may, I'd like those pleadings to be filed as part of

13   the record in this case and they can be filed along

14   with a notice of filing, and that means you're going

15   to give me a hard copy, so every party is responsible

16   for filing the documents that it filed before.

17        Hawker has a complaint.  Plaintiff has a

18   motion to intervene.  Hawker has a motion for judgment

19   on administrative record.  I don't think there's

20   anything else we need to look at.

21        The briefing material to the CDI report, you

22   know, I can't imagine that would be relevant at all

23   because, you know, that investigation postdated the

24   earlier evaluation, but that's up to the parties, so

25   I'll put that in the notice too.

1          And then what you're going to file as the

2     initial administrative record, it would be those

3     documents that related to at least the testing and

4     financing.  If there were documents related to other

5     aspects of deficiencies, it really doesn't matter.

6     We're not revisiting the prior protest.  This is this

7     protest, and this protest has to do with the issue

8     that I indicated, that the strong allegation here is

9     that the resolicitation was designed in a way to favor

10    Hawker, meaning no testing requirements at all because

11    Hawker had failed.  I mean, you know, the earlier

12    lawsuit wasn't adjudicated, and this financing issue.

13    So that's what I'll be looking at.

14          And as I said, to give you an idea, this is

15    the case you paint that Plaintiff in this case loses,

16    that the administrative record shows that there was

17    such a concern about the testing that it was

18    determined that both parties had been disadvantaged by

19    it in the sense that there had not been meaningful or

20    reliable testing or that the testing protocols

21    themselves were deficient and it didn't matter how

22    they were applied, they were just deficient and that

23    this testing actually served no reasonable purpose at

24    all and shouldn't have been part of the earlier

25    proceeding and the basis on which the operational

1    assessments can be determined reasonably without any

2    testing.

3           Now that's the kind of neutral evaluation

4    that would suggest that you've got a really good

5    reason for doing what you did, and I'm only talking

6    about testing.  What wouldn't work would be either

7    nothing in the file or something that said we got rid

8    of the testing because it was a real problem.  And we

9    know we're going to have Hawker and SNC fighting over

10   this contract until it's irreversibly awarded.

11          But I can't predict any other protest that

12   could be filed based on the result of this.  You could

13   have a situation where if you didn't have a

14   nonarbitrary corrective action vis-à-vis the

15   elimination of these two requirements, you'd have a

16   situation where the Court could make all the

17   declarations there are, but I cannot be in a position

18   to command the Air Force to go ahead with a prior

19   contract.  I can only prohibit them from proceeding

20   with Hawker, okay?

21          The Air Force always can say the following:

22   gee, we don't want to spend a billion dollars

23   assisting Afghanistan.  Gee, this isn't worth going

24   through.  Gee, we'll do it another way.  You know,

25   Plaintiff has to understand the limits of what I can

1    and cannot do, but that's what we'll be trying to do,

2    and I hope that you'll all agree when the time comes

3    to a briefing schedule that suits all of your

4    interests.  My main concern now is to get on file what

5    we can to get access to the previous pleadings of note

6    and to resolve who the parties will be and to resolve

7    the status of the CDI memo.

8                MR. MILLER:  Your Honor, this is Mr. Miller.

9    What I will do is I will confer with Mr. Bennett and I

10   will hope by this afternoon or early tomorrow we will

11   know our position on the intervention, and we'll have

12   that resolved so that if we're not going to oppose the

13   intervention Hawker can participate.  And then what I

14   would propose is that the three parties confer either

15   tomorrow or the beginning of next week about all of

16   these issues and sketch out a game plan among us going

17   forward as well.

18               THE COURT:  So you don't want me to enter an

19   order today other than granting the protective order

20   and the filing the case under seal?  You're asking me

21   to hold on?

22               MR. MILLER:  Well, no.  We don't mind having

23   the expedited briefing orders in there as well.

24               THE COURT:  Okay.  That's fine.  That's

25   great.  You can always contact Mr. Robinson

1    telephonically if you decide, look, we don't really

2    need further briefing, we all agree on the following

3    and so forth.  That's just fine.  We do not email the

4    law clerk.  He's available by phone.

5              What's your extension?

6              MR. MCCULLOUGH:  Your Honor?

7              THE COURT:  357-6622.

8              Go ahead.

9              MR. MCCULLOUGH:  I'm sorry, Your Honor.

10   This is Mr. McCullough.  From the putative

11   intervenor's point of view --

12             THE COURT:  Putative, but go ahead.

13             MR. MCCULLOUGH:  Sorry.  We need to see the

14   complaint to be able to respond if in fact they're

15   going to oppose Hawker's intervention, and I wonder if

16   you could contemplate how we can do that either under

17   the protective order that you are going to issue or

18   some other way.

19             MR. MILLER:  And if I may interrupt, Your

20   Honor, this is Mr. Miller.  I suspect where this is

21   headed is we are not going to oppose the motion to

22   intervene, and so that will resolve that problem.  It

23   may be helpful to see if I can get an answer to that

24   question and maybe eliminate the question that Mr.

25   McCullough just raised.

1              THE COURT:  Yes, I think that if you don't

2    agree, you're inviting a level of complexity that we

3    really don't need to get into.  It's just going to be

4    a side-show.

5              MR. MILLER:  I understand, Your Honor.  I

6    appreciate the guidance.

7              THE COURT:  And also as an officer of the

8    Court, I can disclose to Mr. McCullough enough about

9    the complaint that he could respond to, meaning I'll

10   sit here and read it to him.  But that's fine.

11             What I'm just going to do then is enter an

12   order with a briefing schedule, which may be obviated

13   very soon, and a date to file the administrative

14   record.  You know, it can be supplemented as you find

15   more pages, but the one that's purged -- I mean, we

16   have two administrative records in our mind.  One is

17   the purged that was filed in the last matter, and then

18   the other is assembling and filing the record that

19   surrounded the corrective action, and I just don't see

20   three weeks.

21             I can see three weeks for agreeing on the

22   documents out of the 120,000 that might be marginally

23   relevant, but this is going to be a continuing process

24   and I want it done as soon as possible.  And right now

25   I'm going to list two weeks, and that's for

1   everything, and then somebody can give me a reason why

2   it should be extended.  Okay?  And I don't mind

3   tomorrow issuing another order immediately granting

4   the motion to intervene as a matter of right as

5   unopposed and allowing Mr. McCullough to be subject to

6   the protective order.

7            MR. MILLER:  And we will alert Mr. Robinson

8   to our position, but I suspect that's where we'll be,

9   Your Honor.

10           THE COURT:  Okay.  And if you could do so by

11  as a matter of personal convenience 2 p.m. tomorrow.

12           MR. MILLER:  We'll even try to do it today,

13  but certainly by 2 p.m. tomorrow, Your Honor, yes.

14           THE COURT:  Oh, okay.  Thank you.

15           Is there anything else we can do today?

16           (No response.)

17           THE COURT:  Well, then not hearing anything,

18  thank you very much for participating, and Mr.

19  Robinson will wait to hear from you and sort out what

20  we need to look at, and we'll be going forward.

21           Let me know through Mr. Robinson any time I

22  can have an on or off the record -- preferred on the

23  record -- status conference that would convenience you

24  rather than coming into Court or filing papers.

25  Everything will be subject to recordation as well as

38

1    an order that's entered at the end, but if you want to

2    proceed formally, that's your option.  Okay?

3              MR. MILLER:  Thank you, Your Honor.

4              THE COURT:  Thank you.

5              MR. BENNETT:  Thank you, Your Honor.

6              THE COURT:  Bye.

7              (Whereupon, at 1:56 p.m., the status

8    conference in the above-entitled matter was

9    concluded.)

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

<u>CERTIFICATE</u>

DOCKET NO.:          12-375C

CASE TITLE:          Sierra Nevada Corporation v. U.S.

HEARING DATE:        June 14, 2012


        I certify that the foregoing is a true and correct transcript made to the best of our ability from a copy of the official electronic digital recording provided by the United States Court of Federal Claims in the above-entitled matter.


                              Date:  June 20, 2012



                              Judith Persson

                              Heritage Reporting Corporation
                              Suite 600
                              1220 L Street, N.W.
                              Washington, D.C.  20005-4018